### UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>CAPITAL ONE FINANCIAL CORPORATION and CAPITAL ONE, NATIONAL ASSOCIATION,<br><br>Defendants. | Case No. _____<br><br><br>**COMPLAINT &**<br>**DEMAND FOR JURY TRIAL** |

The Consumer Financial Protection Bureau (Bureau) brings this action against Capital One, National Association (CONA) and Capital One Financial Corporation (COFC) (collectively with CONA, Capital One or the Bank) under Sections 1031, 1036, 1054, and 1055 of the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536, 5564, and 5565; Sections 263 and 270 of the Truth in Savings Act (TISA), 12 U.S.C. §§ 4302 and 4309; and Section 1030.8 of TISA's implementing regulation, Regulation DD, 12 C.F.R. § 1030.8; and alleges as follows:

### INTRODUCTION

1.       Capital One illegally avoided paying billions in interest to millions of consumers who held its flagship "high interest" savings account, "360 Savings." After promising 360 Savings accountholders that 360 Savings provided one of the nation's best interest rates, it froze the rate at a low level during a period when interest rates were rising nationwide. Around the same time, the Bank created a new product, "360 Performance Savings," which was identical to 360 Savings in every way other than its substantially higher interest rate, then obscured the new

1

product's existence from 360 Savings accountholders to avoid paying them its higher interest.

2.      Specifically, Capital One promised consumers that 360 Savings provided one of the nation's "top," "best," and "highest" interest rates, and that by opening a 360 Savings account, their savings would "earn much more" in interest "than what it would in an average savings or money market account." These representations led 360 Savings accountholders to believe they would not have to closely monitor their accounts' rate because they could rely on Capital One to deliver on its promises. Capital One also made representations that created the net impression that 360 Savings was and would be the Bank's only "high interest" savings product of its kind.

3.      Then, in 2019, without notice to 360 Savings accountholders, Capital One ceased offering 360 Savings to new customers and replaced it with a new "high yield" savings product, 360 Performance Savings. This new savings product was identical to 360 Savings in every material way—the Bank marketed both products as "high interest" (or "high yield") online savings accounts and gave them *the same terms and conditions*, including a variable interest rate, no minimum balance, and no monthly fees—with one exception: 360 Performance Savings has always had a substantially higher interest rate. In July 2024, for instance, the 360 Performance Savings rate was over 14 times the 360 Savings rate.

4.      Capital One worked to keep 360 Savings accountholders in the dark about 360 Performance Savings' existence as a distinct savings product with a higher rate. The Bank gave the two products similar names and marketed 360 Performance Savings as it had 360 Savings; it eliminated references to 360 Savings on its website and replaced them with references to 360 Performance Savings without disclosing that 360 Savings continued to exist as a distinct product, thus implying the products were the same; it did not specifically notify 360 Savings

accountholders about the new product and excluded 360 Savings accountholders from a marketing campaign that advertised 360 Performance Savings to Capital One's other customers; and it explicitly forbade its employees from proactively telling 360 Savings accountholders about 360 Performance Savings.

5.     As a result of Capital One's actions, 360 Savings accountholders either were not aware of 360 Performance Savings or were misled into believing their 360 Savings accounts *were* 360 Performance Savings accounts with the higher rate.

6.     In the meantime, starting in December 2020 and continuing until at least August 2024, the Bank froze the 360 Savings rate at 0.30%, even as savings account interest rates across the country rose sharply, starting in early 2022. By December 2022, 0.30% was at or below the national average money market and savings account rates published by the Federal Deposit Insurance Corporation (FDIC). By contrast, between April 2022 and August 2024, the Bank increased the 360 Performance Savings rate from 0.40% to 4.25%. Accordingly, for roughly the last two years, 360 Savings accountholders have not earned a rate that meets the promises Capital One made in its marketing materials.

7.     Capital One's misconduct allowed it to use 360 Performance Savings to attract new deposits to fund its other banking activities, without having to pay existing 360 Savings accountholders the interest the Bank had promised they would earn from 360 Savings. Because millions of 360 Savings accountholders never opened 360 Performance Savings accounts, the Bank has avoided paying over $2 billion in interest to these accountholders.

8.     By failing to fulfill the consumer expectations it created, Capital One violated the CFPA's prohibition on deceptive and abusive acts and practices, TISA, and Regulation DD. The Bureau thus brings this action to halt the Bank's illegal conduct, provide redress to

consumers, and obtain appropriate penalties and other relief.

## JURISDICTION AND VENUE

9.      This Court has subject-matter jurisdiction over this action because it is brought

under "Federal consumer financial law," 12 U.S.C. § 5565(a)(1); presents a federal question, 28

U.S.C. § 1331; and is brought by an agency of the United States, 28 U.S.C. § 1345.

10.     Venue is proper in this district because CONA and COFC are located, reside, and

do business in this district. 12 U.S.C. § 5564(f).

## PARTIES

11.     The Bureau is an independent agency of the United States charged with

regulating "the offering and provision of consumer financial products or services under the

Federal consumer financial laws." 12 U.S.C. § 5491(a).

12.     The Bureau has independent litigating authority, 12 U.S.C. § 5564(a)-(b),

including the authority to enforce the CFPA, TISA, and Regulation DD, and to secure

appropriate relief for violations of those provisions, 12 U.S.C. §§ 5481(12)(P) and (14), 5565; 12

U.S.C. § 4309(a)(3), (b)(1); 12 C.F.R. § 1030.1(a).

13.     CONA is a national bank headquartered in McLean, Virginia. It offers a variety

of financial products and services to consumers, including deposit accounts. At various times, its

deposit account offerings have included 360 Savings and 360 Performance Savings.

14.     CONA is a "covered person" under the CFPA because it engages in deposit-

taking activities, transmits and exchanges funds, or otherwise acts as a custodian of funds for use

by or on behalf of consumers primarily for personal, family, or household purposes. 12 U.S.C.

§§ 5481(5), (6)(A), (8), (15)(A)(iv).

15.     CONA is also a "[d]epository institution" subject to TISA and Regulation DD because its deposits are insured by the FDIC. 12 U.S.C. §§ 4302(e), 4313(6); 12 U.S.C. § 461(b)(1)(A)(i); 12 C.F.R. §§ 1030.2(j), 1030.8(a)(1).

16.     COFC is a financial holding company incorporated in Delaware and headquartered in McLean, Virginia. COFC is the parent and holding company of CONA. CONA is a wholly owned subsidiary of COFC.

17.     COFC is a "covered person" under the CFPA because it is an "affiliate" of CONA that acts as its "service provider." 12 U.S.C. § 5481(6)(B).

18.     COFC is CONA's affiliate because it is CONA's holding company and thus "controls" CONA. 12 U.S.C. § 5481(1). COFC is CONA's service provider because it owns and maintains the website where many of the misrepresentations and omissions at issue occurred, and it promulgated the policies and procedures Capital One used and uses to set interest rates for 360 Savings, 360 Performance Savings, and other Bank products. 12 U.S.C. § 5481(26)(A)(i).

## FACTUAL ALLEGATIONS

**A.    Capital One represented that 360 Savings was a "high interest" savings account that provided one of the nation's highest savings rates and would earn much more interest than the average savings or money market account.**

19.     In 2012, COFC acquired the online bank ING Direct USA and its assets, including its online savings product, "ING Direct."

20.     ING Direct had been known for having higher-than-average interest rates.

21.     In 2013, Capital One rebranded "ING Direct" as "360 Savings," made ING Direct savings accountholders 360 Savings accountholders, and commenced offering 360 Savings accounts to the general public.

22.     Many ING Direct savings accountholders who became 360 Savings

accountholders after COFC's acquisition likely opened ING Direct savings accounts because of ING Direct's high interest rates.

23.    Capital One assured former ING Direct savings accountholders that, with 360 Savings, they would "still have . . . great rates." It also "pledge[d]" on its website that it would "continue to be home to no-fee, no-minimum checking and savings accounts—with the great rates that we know are important to you."

24.    Between 2013 and 2019, Capital One marketed 360 Savings as a "high interest" online savings account with "great rates."

25.    Consumers reasonably understand "high interest" savings accounts to refer to a specific type of savings product that is distinct from "traditional" savings accounts in at least one significant way: "High interest" savings accounts have interest rates that are many times higher than "traditional" savings account rates.

26.    As Capital One's website has explained since at least 2019, there is a difference between a "traditional" savings account and a "high interest" or "high yield" savings account: "It's all about the interest." "Simply put," the website states, "a high-yield savings account— sometimes called a high-interest savings account—is a bank account that often has a higher interest rate or annual percentage yield (APY) than a traditional savings account."

27.    Other bank and consumer finance websites explain that the rates on "high interest" or "high yield" savings accounts can be as much as 15 times higher than the FDIC national average savings account rate, and 10 to 12 times higher than "traditional" savings account rates.[1]

---

[1] Sabrina Karl, *What Is a High-Yield Savings Account?*, Investopedia, https://www.investopedia.com/articles/pf/09/high-yield-savings-account.asp (last visited Jan. 13, 2025) ("The interest rates on high-yield savings accounts can be 10 to 12 times higher than

28.     From 2013 to at least 2016, Capital One's website—which COFC maintains with CONA—included a webpage for the "360 Savings account."

29.     The 360 Savings webpage described the product as an online savings account with high interest, no fees, and no minimum balance requirement. The webpage also featured a chart comparing the 360 Savings APY with what Capital One represented were national average savings and money market APYs.[2] That chart consistently showed the 360 Savings APY as substantially higher than the national average savings and money market APYs. Figures 1 and 2 below show portions of the 360 Savings webpage as of April 2013 and December 2016, respectively.

---

traditional savings account returns, and up to 15 times the FDIC national average [of a standard savings account]."); *What is a High Yield Savings Account and How Does it Work?*, PNC, https://www.pnc.com/insights/personal-finance/save/what-is-a-high-yield-savings-account.html#legal (last visited Jan. 13, 2025) ("The interest rates on these accounts can be ten times higher than the national average for a regular savings account."); Margarette Burnette, *What Is a High-Yield Savings Account?*, Nerdwallet, https://www.nerdwallet.com/article/banking/high-interest-savings-account (Oct. 29, 2024) ("A high-yield savings account is a savings account that earns an above-average interest rate on deposits. . . . The average national rate for savings accounts is 0.42%, but a high-yield savings account earns up to 10 times that rate or more.").

[2] Capital One's sources for these national averages varied. As shown in Figures 1 and 2, its sources include the "non-jumbo Weekly National Rates on FDIC.gov" and the "Informa Research Deposit Report."

Figure 1



Figure 2



30.     From May 2013 to at least March 2016, Capital One's website also promised that "360 Savings has no fees, no minimums and no catches. Your money will earn much more than what it would in an average savings or money market account . . . . What's the catch? There is none." Figure 3 below shows a portion of the 360 Savings webpage in February 2013.

Figure 3



31.      From April 2016 to February 2018, the webpage made the similar commitment that "[o]ur two savings products, 360 Savings and 360 Money Market, have no fees, no minimums, and no catches. Your money will earn much more than what it would in an average savings or money market account . . . . What's the catch? There is none." Figure 4 below shows a portion of the 360 Savings webpage in January 2018.

Figure 4



32.     From at least November 2017 to January 2019, Capital One's webpage for 360 Savings featured a review from a "Capital One customer[]" that described the 360 Savings interest rate as "unmatched."

33.     Capital One marketed 360 Savings as a "high interest" savings account beyond its website. For example, between 2013 and 2019, the Bank sent numerous consumers mailers and emails that advertised 360 Savings as a "high interest" account with a "better everyday interest rate," a "great everyday rate," a "top savings rate," "one of the nation's highest savings rates" and "one of the nation's best savings rates." Likewise, in a 2018 mailer campaign encouraging consumers to deposit their tax refunds in 360 Savings accounts, Capital One described the 360 Savings interest rate as "one of the nation's top savings rates," "one of the nation's best savings rates," and "one of the nation's highest savings rates."

34.     Thus, although Capital One sets the 360 Savings interest rate and, per its account disclosures, can change the rate at its discretion, it was reasonable for consumers to interpret the Bank's representations about the 360 Savings rate to mean that the Bank would use its discretion

to ensure that the rate was at a level that fulfilled the promises described above.

35.     It was reasonable for consumers to expect that the Bank's representations about the 360 Savings rate would remain true over the entire time period that 360 Savings accountholders held their accounts.

**B.     Capital One represented that the 360 Savings interest rate would vary based on market conditions and competition.**

36.     Capital One also repeatedly represented that it would adjust the 360 Savings rate in accordance with market conditions.

37.     For example, in 2018, Capital One directed its customer service representatives to tell consumers—including 360 Savings accountholders—that the 360 Savings rate was "based on . . . [c]urrent market conditions" and "[o]ur competition."

38.     When national interest rates went down, Capital One told consumers that this decline would affect their rates. In 2019, the Bank directed its customer service representatives to tell consumers who inquired about the Bank's interest rates—including 360 Savings accountholders—the following: "You may have heard on the news that Federal Reserve rates are moving downward, which affects everything from mortgages to savings accounts. Because of these new market conditions, we've adjusted our deposit account rates . . . ."

39.     And then, when national interest rates went up, Capital One told consumers that the increase would affect their rates. In 2022, the Bank altered its instructions to its customer service representatives, telling them to state the following: "You may have heard on the news that Federal Reserve rates are moving upward, which affects everything from mortgages to savings accounts. Because of these new market conditions, we've adjusted our deposit account rates . . . ."

40.     In 2023, Capital One instructed associates to tell consumers—including 360

Savings accountholders—that, "[d]ue to current market conditions, we've adjusted our deposit account rates," and that "[c]hanges in interest rates tend to track market rates."

41.     Consumers opened and maintained 360 Savings accounts based on Capital One's representations that 360 Savings had a "high interest" rate that varied based on market conditions and the rates offered by competitors' savings products. It was reasonable for consumers to interpret those representations to mean that the 360 Savings rate would increase when interest rates rose more generally.

42.     Capital One gave consumers further reason to expect 360 Savings to perform in this way by following through on its representations from 2013 to 2019. During this period, the product's interest rate varied with—and often outperformed—the federal funds rate[3] and exceeded the national average savings and money market account interest rates published by the FDIC.

## C.     Capital One represented that 360 Savings was and would be the Bank's only high interest savings product of its kind.

43.     From 2013 to 2019, Capital One marketed 360 Savings as the Bank's only "high interest" savings account of its kind—i.e., (1) a high interest, online, non-retirement savings account for adults with a variable rate, no monthly fees, no minimum balance requirement, and no rate tiers; (2) under the "360" brand name; and (3) for which Capital One would provide an interest rate that was "great" and one of the nation's "top" or "best" rates. On the Capital One

---

[3] The federal funds rate, set by the Federal Reserve, "is the interest rate at which depository institutions trade federal funds (balances held at Federal Reserve Banks) with each other overnight. . . . The federal funds rate is the central interest rate in the U.S. financial market. It influences other interest rates such as the prime rate, which is the rate banks charge their customers with higher credit ratings. Additionally, the federal funds rate indirectly influences longer-term interest rates such as mortgages, loans, and savings, all of which are very important to consumer wealth and confidence." Board of Governors of the Federal Reserve System (US), *Federal Funds Effective Rate*, FRED, Federal Reserve Bank of St. Louis, https://fred.stlouisfed.org/series/FEDFUNDS (last visited Jan. 13, 2025).

webpages that listed the Bank's savings products and allowed consumers to compare products, 360 Savings was the only account with all these features.

44.     As described above, Capital One marketed the 360 Savings account as providing, among other things, an interest rate that was "great" and one of the nation's "top" or "best" rates.

45.     In its marketing materials, Capital One referred to 360 Savings as "360 Savings: *the* online savings account from Capital One 360" and "*The* 360 Savings Account."[4]

46.     These representations gave the net impression that the 360 Savings product was and would be Capital One's only (1) high interest, online, non-retirement savings account for adults with a variable rate, no monthly fees, no minimum balance requirement, and no rate tiers; (2) under the "360" brand name; and (3) for which Capital One would provide an interest rate that was "great" and one of the nation's "top" or "best" rates.

47.     It would not make any sense for a bank to characterize a product's interest rate as "high," "great," and "one of the nation's" "top" and "best" rates if the rate was far below the interest rate for another savings product that the same bank offered and also characterized the same way.

48.     Before launching 360 Performance Savings, Capital One did not adequately disclose to 360 Savings accountholders that 360 Savings would no longer be its only high interest savings account with the features described in Paragraph 46 because the Bank was launching 360 Performance Savings and the new product would have materially the same terms, conditions, and features as 360 Savings, except for a substantially higher interest rate.

**D.     Capital One led 360 Savings accountholders to believe they did not need to closely monitor the rate on their accounts.**

49.     Capital One led 360 Savings accountholders to believe they could treat their

---

[4] Emphases added.

accounts as long-term, passive savings vehicles that did not require routine monitoring.

50.    It was reasonable for 360 Savings accountholders to interpret Capital One's representations that 360 Savings was a "high interest" account with a "better everyday interest rate," a "great everyday rate," a "top savings rate," "one of the nation's highest savings rates" and "one of the nation's best savings rates," and that 360 Savings would earn "much more" in interest "than . . . an average savings or money market account," to mean they would not have to closely monitor their accounts' interest rate because they could rely on Capital One to deliver on its promises.

51.    Capital One made additional representations that reinforced this interpretation. In 2017, for instance, Capital One's website told consumers that 360 Savings had a "[c]ompetitive rate you can bank on."

52.    In 2017 and 2018, when the Bank raised the 360 Savings rate, it assured accountholders that "[t]here's nothing for you to do. Just sit back and enjoy the extra interest."

53.    From 2013 through at least 2018, Capital One encouraged 360 Savings accountholders to set up automatic transfers to their accounts as a way to "put [their] savings" or "money" "on autopilot" and "[k]ick back, relax, and save up," further reinforcing the impression that 360 Savings was a long-term, passive savings vehicle that did not require routine monitoring.

54.    As a result of these representations, many 360 Savings accountholders did not closely monitor their accounts' interest rate.

55.    Moreover, Capital One knew savings accountholders typically do not monitor their accounts. Sometime before October 2022, the Bank commissioned a survey to identify, among other things, how frequently consumers checked their savings accounts, and how many of

them knew what their savings account interest rate was. In October 2022, the Bank publicized its

findings: "57% of respondents only check their savings account less than once a month – or not

at all – and nearly half (48%) of respondents don't know what their savings account interest rate

is."

**E.    Capital One launched a new "high yield" savings product, 360 Performance Savings, which was the same as 360 Savings in all ways other than its higher interest rate.**

56.    In September 2019, Capital One began offering a new online "high yield" savings

product, called "360 Performance Savings."

57.    As described in Paragraph 26, on its website, Capital One has consistently

explained that "high-yield savings account" and "high-interest savings account" are

interchangeable terms.

58.    Around the same time that it began offering 360 Performance Savings, Capital

One stopped offering or opening new 360 Savings accounts.

59.    360 Performance Savings was the same as 360 Savings in all material ways—

except for its higher interest rate.

60.    Like 360 Savings, 360 Performance Savings was and is an online, high interest,

non-retirement savings account for adults with a variable rate, no monthly fees, no minimum

balance requirement, and no rate tiers.

61.    Capital One's "Terms and Conditions" for 360 Performance Savings were and are

materially the same as those for 360 Savings. Both products, for example, have consistently had

the same terms and conditions for account eligibility; account ownership (e.g., individual

account, joint account, joint account with a minor); minimum required balance (none); account

fees (no monthly maintenance fees, but wire and account statement fees); deposit methods (e.g.,

cash, check, ACH, wire transfer); withdrawal methods (e.g., by phone, website, branch); deposit availability; interest compounding and crediting (monthly); automatic withdrawals; overdraft prohibition; and designated account beneficiary options. And the terms and conditions for both products have consistently specified that each product's rate is "variable and may change at any time at [Capital One's] discretion."

62.    Capital One also recognized, in talking points for Bank associates, that "Customers Who May Be A Good Fit" for 360 Performance Savings were "Individuals who want savings with a competitive interest rate with no tiered structure" and "Individuals who want an account with no fees or minimums"—in other words, 360 Savings accountholders.

63.    The only thing that has ever meaningfully distinguished 360 Performance Savings from 360 Savings is the former product's higher interest rate. Since 360 Performance Savings' launch, Capital One has consistently kept its interest rate higher than the 360 Savings rate, and the gap between these products' rates has grown immensely over time.

64.    As the chart in Figure 5 below shows, when Capital One launched 360 Performance Savings in September 2019, it set the product's interest rate at 1.90%. At the time, the 360 Savings interest rate was 1.00%. Between late 2019 and late 2020, as the federal funds rate trended downwards then plateaued, Capital One dropped the 360 Performance Savings rate to 0.40% and the 360 Savings rate to 0.30%.

65.    As the chart in Figure 5 below further shows, when the federal funds rate steadily increased from 0.07% in January 2022 to 4.33% in January 2023, then to 5.33% in January 2024, the Bank increased the 360 Performance Savings rate from 0.40% in April 2022 to 3.30% in January 2023, and then to 4.35% in January 2024, where it remained until April 2024. During this same time period, however, the 360 Savings rate remained at 0.30%. By August 2024, the

360 Performance Savings rate was 4.25%, but the 360 Savings rate was still at 0.30%.

Figure 5



66.    Since 2009, the FDIC has published the monthly average interest rates paid on U.S. savings and money market accounts, based on available data.

67.    From December 2022 through at least August 2024, the 360 Savings rate has remained below the national average money market account rate published by the FDIC.

68.    From December 2022 through at least August 2024, the 360 Savings rate has remained at or below the national average savings account interest rate published by the FDIC.

69.    Because the only material difference between 360 Savings and 360 Performance Savings has always been the latter product's higher interest rate, no reasonable consumer deciding between the two products would ever have preferred 360 Savings to 360 Performance Savings.

**F.    Capital One obscured 360 Performance Savings' existence and higher interest rate from 360 Savings accountholders.**

70.    Capital One obscured 360 Performance Savings' existence and higher interest rate from 360 Savings accountholders in at least six ways.

71.    *First*, Capital One did not notify 360 Savings accountholders that it was offering a new, nearly identical savings product with a higher interest rate or that it was no longer offering or opening new 360 Savings accounts. Rather, through emails, direct mail, and targeted advertising on its online banking platform, the Bank promoted 360 Performance Savings to existing customers who *did not have* 360 Savings accounts, including its credit card customers, checking accountholders, and CD customers.

72.    In contrast, when Capital One increased the interest rate on its 360 Money Market product in 2017, it alerted 360 Savings accountholders to this change in a mailer, telling them it "want[ed] our valued customers to know" that they "could be earning more" in the 360 Money Market account. The mailer featured a chart comparing 360 Savings and 360 Money Market account rates and showing, based on a range of example account balances, how much "[a]dditional interest" 360 Savings accountholders could earn in a 360 Money Market account.

73.    *Second*, Capital One gave 360 Performance Savings nearly the same name as 360 Savings, the same features as 360 Savings, and the same terms and conditions as 360 Savings.

74.    *Third,* the Bank promoted 360 Performance Savings by emphasizing the same characteristics it had emphasized when promoting 360 Savings—it marketed 360 Performance Savings as an online, "high interest" (or "high yield") savings account for adults with no monthly fees, no minimum balance requirement, and a variable rate that was and would be "a great rate," "a top savings rate," "one of the nation's top savings rates," and "one of the best savings rates in America."

19

75. **Fourth,** Capital One eliminated nearly all references to 360 Savings from its website and marketing, further obscuring that 360 Savings and 360 Performance Savings were two separate products.

76. **Fifth,** on its website, Capital One promoted 360 Performance Savings in ways that (1) hid that 360 Performance Savings was distinct from 360 Savings and (2) suggested that the former was simply a re-branding of the latter. As detailed below, the Bank replaced the website's references to "360 Savings" with references to "360 Performance Savings," without disclosing that 360 Savings continued to exist as a separate savings product with a lower rate.

77. For instance, from 2013 to 360 Performance Savings' launch in September 2019, Capital One's website dedicated a webpage to "The 360 Savings account." After 360 Performance Savings' introduction, however, Capital One replaced that webpage with one that was dedicated to the new product and did not mention 360 Savings.

78. As another example, since at least November 2017, Capital One's website has had a page where consumers can view side-by-side comparisons of the Bank's savings products on key criteria, like their respective interest rates and fees. At different points in time, these webpages were titled "Compare savings accounts," "View All Savings Accounts," "Compare all accounts," or "Compare all accounts and rates."

79. In September 2019, just before Capital One launched 360 Performance Savings, the Bank's "Compare savings accounts" webpage appeared as shown in Figure 6 below, listing 360 Savings among its other savings products:

Figure 6



80.     The title and inclusion of multiple distinct savings accounts on this webpage implied that this was a comparison of *all* Capital One savings products. And the webpage did, indeed, show all savings products Capital One offered just before it launched 360 Performance Savings.

81.     As shown in Figure 7 below, after 360 Performance Savings' launch, Capital One replaced the information panel for 360 Savings on its "Compare savings accounts" webpage with a virtually identical information panel for 360 Performance Savings. On this webpage, the information panel stated that 360 Performance Savings had no minimum balance requirement and no fees. Capital One did not disclose that 360 Performance Savings was a different product from 360 Savings or that 360 Savings continued to exist as a savings product that Capital One accountholders still used.

Figure 7



82.    The same is true of all other Capital One webpages designed to allow consumers to compare the Bank's savings products ("View All Savings Accounts," "Compare all accounts," and "Compare all accounts and rates"): After 360 Performance Savings' launch, Capital One simply substituted "360 Performance Savings" for "360 Savings" on these pages without disclosing that they were different products or otherwise referencing 360 Savings.

83.    Similarly, until 360 Performance Savings' launch, Capital One's website featured an "FAQ" webpage for 360 Savings. After 360 Performance Savings' launch, Capital One replaced this webpage with a similar FAQ webpage for 360 Performance Savings. Both FAQ

webpages had the same format, nearly the same title, and used the same promotional language—"Unlock everything you need to know to open a 360 [Performance] Savings account today."

84.     Although the 360 Performance Savings FAQs included a few questions not included in the 360 Savings FAQs, neither its questions nor its answers disclosed that 360 Performance Savings was not the same product as 360 Savings. And yet, the 360 Performance Savings FAQs did include and answer the question, "What's the difference between a 360 Performance Savings account and a 360 CD account?"

85.     Instead, the 360 Savings and 360 Performance Savings FAQs suggested the two products were one and the same: as both sets of FAQs explained, both products were online savings accounts and had no monthly fees or minimum balance requirement, had a limit of 6 withdrawals per month, permitted transfers via mobile app or "Automatic Savings Plan," could have up to 10 individuals as "Payable on Death" beneficiaries, and could be opened online or at a Bank location, among other features.

86.     **_Finally_**, Capital One obscured the fact that 360 Performance Savings was a distinct product with a higher interest rate from 360 Savings accountholders by prohibiting Bank employees from sharing such information with 360 Savings accountholders, outside of very limited circumstances.

87.     For example, the Bank told front-line "ambassadors"—associates who work in the Bank's physical branches—they "_must not proactively mention_ the ability to convert [360 Savings accounts to 360 Performance Savings accounts] to customers."[5] Similarly, the Bank forbade its ambassadors from forwarding 360 Savings accountholders to Bank Voice—the Bank's unit that handles account conversions—unless the accountholders "_ask[ed] directly_ about

---

[5] Emphasis added.

the ability to convert accounts."[6]

88.     Likewise, the Bank instructed its employees to "*only be reactive* in mentioning 360 Performance Savings to . . . 360 Savings account holders."[7] It further told its employees that they could "[o]nly offer the option to convert [a 360 Savings] account" to a 360 Performance Savings account in four scenarios, each of which involved a 360 Savings accountholder who was (1) already aware that 360 Performance Savings was a distinct product from 360 Savings or (2) was expressly unhappy about their 360 Savings interest rate.

89.     As a consequence of Capital One's efforts to obscure the difference between 360 Performance Savings and 360 Savings from 360 Savings accountholders, it was reasonable for 360 Savings accountholders to (1) not know Capital One was offering a new savings product identical to 360 Savings in all ways other than its higher interest rate; (2) believe their 360 Savings accounts *were* 360 Performance Savings accounts and therefore assume they were receiving the 360 Performance Savings interest rate that Capital One advertised; or (3) not understand that their 360 Savings accounts' interest rate no longer fulfilled Capital One's representations about the rate it would offer for 360 Savings.

90.     Even though 360 Savings accountholders had no reason to prefer 360 Savings to 360 Performance Savings, fewer than a quarter of consumers who held 360 Savings accounts as of the date of the new product's launch in September 2019 had opened 360 Performance Savings accounts as of July 2024.

**G.     Capital One profited from obscuring 360 Performance Savings' existence as a distinct product with a higher interest rate.**

91.     Capital One has avoided paying millions of 360 Savings accountholders more

---

[6] Emphasis added.
[7] Emphasis added.

than $2 billion in interest it would have had to pay them had they opened 360 Performance Savings accounts.

## COUNT I
### Violation of the CFPA - Abusive Acts and Practices
### (Against All Defendants)

*Capital One took unreasonable advantage of 360 Savings accountholders'
lack of understanding of 360 Savings' material risks and costs.*

92.     The Bureau incorporates and re-alleges by reference Paragraphs 1-91.

93.     The CFPA makes it unlawful for covered persons to engage in any abusive act or practice. 12 U.S.C. § 5536(a)(1)(B). An act or practice is abusive if it "takes unreasonable advantage of . . . a lack of understanding on the part of the consumer of the material risks, costs, or conditions of the product or service." 12 U.S.C. § 5531(d)(2)(A).

94.     360 Savings accountholders did not understand the following material risks and costs of 360 Savings:

  a)     They did not understand the risk that Capital One would offer another savings product with materially identical features except for its substantially higher interest rate.

  b)     Because they did not know about 360 Performance Savings and its higher rate, or that 360 Performance Savings was distinct from 360 Savings, they did not understand the risk that they were using the Bank's vastly inferior savings product without any benefit that would justify the lower interest rate. They also did not understand the opportunity cost of keeping their 360 Savings accounts and not opening 360 Performance Savings accounts, in the form of additional interest they missed out on earning.

  c)     They did not understand the risk that Capital One would fail to deliver on

its promises about the 360 Savings rate. Encouraged in part by Capital One's representations, they considered 360 Savings to be a passive, long-term savings product that did not require routine monitoring, and as a result, they did not understand the risk that they would have to check whether Capital One was delivering on its promises by regularly monitoring their accounts for interest rate changes and comparing the rates provided against market rates, such as national average rates or Capital One's competitors' rates; and the risk that they would have to regularly monitor Capital One's marketing for new savings products to avoid missing out on the interest Capital One promised them.

95.    Capital One took advantage of 360 Savings accountholders' lack of understanding of these risks and costs by avoiding paying these accountholders the substantial additional interest it would have paid them had they understood these risks and costs and thus opened 360 Performance Savings accounts.

96.    Both COFC and CONA financially benefited from this conduct. CONA increased its profits, and thus COFC's profits, by retaining billions in additional interest it would have paid 360 Savings accountholders had they opened 360 Performance Savings accounts.

97.    Capital One's advantage was unreasonable because, as described in Paragraphs 70-90, the Bank contributed to this lack of understanding by obscuring 360 Performance Savings' existence and higher interest rate from 360 Savings accountholders.

98.    Accordingly, Capital One engaged in abusive acts or practices, in violation of the CFPA. 12 U.S.C. §§ 5531(a), (d)(2)(A), 5536(a)(1)(B).

## COUNT II
### Violation of the CFPA - Deceptive Acts and Practices
### (Against All Defendants)

*Capital One falsely represented that 360 Savings was and would be the Bank's only high interest savings product of its kind.*

99.     The Bureau incorporates and re-alleges by reference Paragraphs 1-91.

100.    The CFPA makes it unlawful for covered persons to engage in any deceptive act or practice. 12 U.S.C. § 5536(a)(1)(B). An act or practice is deceptive if it involves a material misrepresentation or omission that is likely to mislead consumers acting reasonably under the circumstances. A misrepresentation or omission is material to consumers if it is likely to affect consumers' choice of, or conduct regarding, the product or service.

101.    As outlined in Paragraphs 43-47 from 2013 to 2019, Capital One made representations that gave consumers the net impression that the 360 Savings product was and would be Capital One's only (1) high interest, online, non-retirement savings account for adults with a variable rate, no monthly fees, no minimum balance requirement, and no rate tiers; (2) under the "360" brand name; (3) for which Capital One would provide an interest rate that was "great" and one of the nation's "top" or "best" rates.

102.    Before launching the 360 Performance Savings product, Capital One did not adequately disclose to 360 Savings accountholders that 360 Savings would no longer be its only high interest savings account with the features described in Paragraph 101 because the Bank was launching 360 Performance Savings and the new product would have materially the same terms, conditions, and features as 360 Savings, except for a substantially higher interest rate.

103.    These representations and omissions were false or otherwise misleading because, in 2019, Capital One began offering 360 Performance Savings—a new (1) high interest, online, non-retirement savings product for adults with a variable rate, no monthly fees, no minimum

balance requirement, and no rate tiers; (2) under the same "360" brand name; (3) for which Capital One would provide an interest rate that was "great" and one of the nation's "top" or "best" rates—in other words, a savings product with materially the same terms, conditions, and features as 360 Savings, except for a substantially higher interest rate.

104.    Capital One's misrepresentations were material because they concerned a central characteristic of 360 Savings—its interest rate—and because they induced or were likely to induce 360 Savings accountholders to maintain their accounts instead of opening 360 Performance Savings accounts and earning significantly more interest.

105.    Accordingly, Capital One engaged in deceptive acts or practices, in violation of the CFPA. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

**COUNT III**
**Violation of the CFPA - Deceptive Acts and Practices**
**(Against All Defendants)**

*Capital One misrepresented the 360 Savings rate.*

106.    The Bureau realleges and incorporates by reference Paragraphs 1-91.

107.    The CFPA makes it unlawful for covered persons to engage in any deceptive act or practice. 12 U.S.C. § 5536(a)(1)(B). An act or practice is deceptive if it involves a material misrepresentation or omission that is likely to mislead consumers acting reasonably under the circumstances. A misrepresentation or omission is material to consumers if it is likely to affect consumers' choice of, or conduct regarding, the product or service.

108.    As outlined in Paragraphs 19-42, from 2013 to at least early 2019, Capital One advertised 360 Savings as a "high interest" savings account with a "variable" rate that was and would be "great," "top," and "one of the nation's best" and "highest" relative to market conditions and the Bank's competition. From at least 2013 to 2018, Capital One also promised

that, in a 360 Savings account, consumers' "money [would] earn much more than what it would in an average savings or money market account." And from at least 2018 to 2021, Capital One told consumers that 360 Savings' rate was based on "market conditions" and its competitors' rates.

109.    These representations were false or otherwise misleading for the reasons described in Paragraphs 63-69 above. For example, no reasonable consumer would understand a "high interest" savings account rate that was "great," "top," or "one of the nation's" "best" and "highest," to mean 0.30% over the years-long period of rising interest rates that has prevailed since December 2022.

110.    Capital One's representations about the 360 Savings interest rate were material because they affected or were likely to affect 360 Savings accountholders' decisions to open and maintain their 360 Savings accounts.

111.    Accordingly, Capital One engaged in deceptive acts or practices, in violation of the CFPA. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

<u>**COUNT IV**</u>
**Violation of TISA and Regulation DD**
**(Against CONA)**

*CONA's advertisements for 360 Savings included*
*misleading and inaccurate representations about the 360 Savings rate.*

112.    The Bureau incorporates and re-alleges by reference Paragraphs 1-91.

113.    TISA provides that "[n]o depository institution or deposit broker shall make any advertisement, announcement, or solicitation relating to a deposit account that is inaccurate or misleading or that misrepresents its deposit contracts." 12 U.S.C. § 4302(e).

114.    Similarly, Regulation DD, TISA's implementing regulation, provides: "An advertisement shall not . . . [b]e misleading or inaccurate or misrepresent a depository

institution's deposit contract." 12 C.F.R. § 1030.8(a)(1).

115.     As outlined in Paragraphs 19-35, from 2013 to at least early 2019, CONA advertised 360 Savings as a "high interest" savings account with a "variable" rate that was and would be "great," "top," and "one of the nation's best" and "highest" relative to market conditions and the Bank's competition. From at least 2013 to 2018, CONA also promised that, in a 360 Savings account, consumers' "money [would] earn much more than what it would in an average savings or money market account."

116.     These representations were false or otherwise misleading for the reasons described in Paragraphs 63-69 above. For example, no reasonable consumer would understand a "high interest" savings account rate that was "great," "top," or "one of the nation's" "best" and "highest," to mean 0.30% over the years-long period of rising interest rates that has prevailed since December 2022.

117.     Accordingly, CONA violated TISA and Regulation DD. 12 U.S.C. § 4302(e); 12 C.F.R. § 1030.8(a)(1).

## COUNT V
### Violation of the CFPA by violating TISA and Regulation DD
### (Against CONA)

118.     The Bureau incorporates and re-alleges by reference Paragraphs 1-91.

119.     Under the CFPA, it is unlawful for covered persons to offer or provide to a consumer any financial product or service not in conformity with Federal consumer financial law or otherwise commit any act or omission in violation of a Federal consumer financial law. 12 U.S.C. § 5536(a)(1)(A).

120.     Federal consumer financial law includes TISA and Regulation DD. 12 U.S.C. § 5481(12)(P), (14); 12 C.F.R. § 1030.1(a).

121.    Additionally, under TISA, a violation of any of TISA's requirements "shall be deemed to be a violation of a requirement imposed under" the CFPA. 12 U.S.C. § 4309(b)(1).

122.    Accordingly, CONA's violations of TISA and Regulation DD, as described in Count IV, are violations of the CFPA. 12 U.S.C. §§ 4309(b)(1), 5536(a)(1)(A).

## PRAYER FOR RELIEF

WHEREFORE, the Bureau requests that this Court, as permitted by 12 U.S.C. § 5565:

    a.  permanently enjoin Defendants from committing future violations of the CFPA, TISA, and Regulation DD;

    b.  grant such additional injunctive relief as the Court deems just and proper;

    c.  award such monetary relief as the Court finds necessary to redress injury to consumers resulting from Capital One's violations, including but not limited to restitution, disgorgement or compensation for unjust enrichment, and payment of damages;

    d.  impose civil money penalties against Defendants under 12 U.S.C. § 5565(c);

    e.  award the Bureau its costs in bringing this action; and

    f.  award additional relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

The Bureau demands a trial by jury on all triable issues.

Dated January 14, 2025                    Respectfully submitted,

ERIC HALPERIN
*Enforcement Director*

THOMAS H. KIM
*Deputy Enforcement Director*

ZACH MASON
*Assistant Deputy Enforcement Director*

/s/ Tassity Johnson
TASSITY JOHNSON (D.C. Bar No. 1049061)
*Senior Litigation Counsel*
tassity.johnson@cfpb.gov, 202-451-1284
JAMIE RENNER (Vt. Bar No. 5222)
*Senior Litigation Counsel*
james.renner@cfpb.gov, 681-473-3873
WESLEY B. WARD (D.C. Bar No. 90021606)
*Enforcement Attorney*
wesley.ward@cfpb.gov, 202-435-5319

/s/ Kara K. Miller
KARA K. MILLER (Va. Bar No. 47821)
*Assistant Deputy Enforcement Director*
*(Local Counsel)*
kara.miller@cfpb.gov, 202-435-7825

Consumer Financial Protection Bureau
1700 G Street, N.W.
Washington, D.C. 20552

ATTORNEYS FOR THE CONSUMER
FINANCIAL PROTECTION BUREAU